IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DANIEL C. VIAU,<br><br>　　　　Defendant. | Case No. 17-cv-04317-CW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>(Dkt. No. 11) |

Plaintiff John Hancock Life Insurance Company (U.S.A.) moves for a preliminary injunction. Docket No. 11. Defendant Daniel C. Viau filed an opposition and Plaintiff filed a reply. Docket Nos. 22, 24. On October 3, 2017, the parties appeared for a hearing. Having considered the papers, supporting evidence, and the arguments of counsel, the Court DENIES Plaintiff's motion for preliminary injunction.

BACKGROUND

Around 1986, Defendant was badly burned in a fire on private property. Decl. of Walter H. Walker ¶ 2. The case settled and the property owner agreed to pay Defendant a substantial amount of money. Id. ¶ 3. The settlement money would be paid through an annuity contract. Id. ¶ 4. The annuity contract, which is dated October 23, 1987, provides for a series of monthly payments

and periodic lump sum payments to be made to Defendant on specific dates starting in 1987 and continuing through August 1, 2045. Decl. of Ketty Saez ¶ 4, Ex. A.

On August 18, 2015, Plaintiff sent Defendant a letter alleging that Plaintiff had been overpaying the monthly payments due to Defendant since September 2007. Id. ¶ 8, Ex. B. The letter contains a comparison of the amount Defendant "should have received" under the annuity contract and the amount actually received. Id., Ex. B. The letter alleges that the total overpayment was $127,588.12. Id., Ex. B at 1.

On September 1, 2015, Plaintiff sent Defendant another letter. Id. ¶ 9, Ex. C. This letter purports to compare the amount Defendant "should have received" under the annuity contract and the amount Defendant actually received. Id., Ex. C at 1. Plaintiff reiterated that Defendant had been overpaid $127,588.12. Id., Ex. C at 1. The letter further refers to a "verbal agreement" "discussed via telephone on September 1, 2015" that Plaintiff would withhold $64,000 from the lump sum due to Defendant on August 19, 2017 and $63,588.12 from the lump sum due to Defendant August 19, 2022. Id. Plaintiff attached a draft "Agreement for Reduction of Debt" to the letter. Id. at 3. In addition to the payment terms, the draft agreement also included a provision that would require Defendant to release Plaintiff "and its directors, officers, affiliates, agents, owners, employees, successors and attorneys, from all claims, demands, known or unknown, that now exist and that arise out of, or are in any way connected with, or that result from, the matters described herein." Id., section 4. The draft agreement contains

no provision requiring Plaintiff to release Defendant in a similar fashion. See id.

On January 27, 2016, March 2, 2016, and April 1, 2016, Plaintiff sent Defendant additional letters, which were substantially the same as the September 1, 2015 letter. Id. ¶¶ 10-12, Exs. D-F. Plaintiff reiterated that Defendant had been overpaid $127,588.12 and again requested that Defendant sign an agreement allowing Plaintiff to withhold $64,000 from the lump sum due on August 19, 2017 and $63,588.12 from the lump sum due on August 19, 2022. See id., Exs. D-F.

On April 28, 2016, Mr. Walker, counsel for Defendant, sent a letter to Plaintiff on behalf of Defendant. Id., Ex. G. Mr. Walker disputed Plaintiff's claim that Defendant owed Plaintiff money. Id. Mr. Walker pointed out a mistake in Plaintiff's letters: Plaintiff's letter states that Defendant should have received $2,400.84 for the month of September 2007, but the annuity contract states that Defendant should have received $3,400.44 for the same month.[1] Id. at 1-2; Id., Ex. A at 1. According to Plaintiff's letter, then, Plaintiff actually underpaid Defendant by $1000 for the month of September 2007. Id., Ex. G at 2. Mr. Walker also alleged that Defendant experienced "difficulties" with his annuity contract under Plaintiff's administration. Id. at 1. Plaintiff apparently allowed the mother of Defendant's child to withdraw money from his monthly payments for about two years. Id. Another time,

---

[1] Mr. Walker's letter contained some typographical errors with respect to these numbers, which he corrected in a follow-up letter on May 5, 2016. Id., Ex. H.

1 Defendant received a check of $1,100 from Plaintiff which
2 Plaintiff had forgotten to give to him. Id. In addition,
3 Defendant's payments "stopped" in October for a period of time,
4 and were restored after Mr. Walker called Plaintiff on
5 Defendant's behalf. Id. at 2. Mr. Walker stated that he
6 considered the matter closed. Id. Mr. Walker also stated that
7 Defendant is "not competitively employable," has "no savings and
8 no assets," and "needs his structured payments to live." Id.
9 Mr. Walker concluded by stating that Defendant would not sign the
10 agreement. Id.

11 On July 17, 2017, Mr. Downey, counsel for Plaintiff, sent a
12 letter to Mr. Walker. Decl. of Thomas M. Downey, Ex. I. Mr.
13 Downey reiterated that Defendant had been overpaid by $127,588.12
14 during the period of September 2007 through August 2015. Id. at
15 1. Mr. Downey came forward with a new proposal to settle the
16 alleged overpayment: (1) the August 19, 2017 lump sum payment of
17 $100,000 would be applied to the debt, and (2) the monthly
18 payments due between September 1, 2017 and September 1, 2019
19 would each be reduced by $1,500 until the remaining balance was
20 paid off. Id. Mr. Downey invited Defendant to provide an
21 alternative proposal, but hinted that Plaintiff might seek court
22 relief. Id. at 2.

23 On July 24, 2017, Mr. Walker responded that, as previously
24 explained, the proposed deal was "unacceptable." Id., Ex. J.
25 Mr. Walker stated that Defendant could not survive on the terms
26 of the proposed deal. Id.

27 Four days later, on July 28, 2017, Plaintiff filed this
28 lawsuit against Defendant, seeking return of the alleged

4

overpayment of $127,588.  Plaintiff asserted claims for restitution, money had and received, conversion, and declaratory and injunctive relief.  On October 10, 2017, Plaintiff filed an amended complaint asserting the same claims but reducing the amount of the alleged overpayment from $127,588 to $113,155.

On August 10, 2017, Plaintiff filed this motion seeking to enjoin Defendant from "accepting, accessing, spending, transferring, withdrawing, or otherwise dissipating the lump sum payments due on August 19, 2017 and August 19, 2022."  Motion at 2.

LEGAL STANDARD

To obtain either a TRO or a preliminary injunction under Federal Rule of Civil Procedure 65, the moving party must demonstrate "(1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction."  Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003); see also Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).  The Ninth Circuit has recognized that an injunction could issue if "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

<u>Winter</u>, 555 U.S. at 22.

DISCUSSION

I.  Likelihood of Success on the Merits

"To prevail on a common count for money had and received, the plaintiff must prove that the defendant is indebted to the plaintiff for money the defendant received for the use and benefit of the plaintiff." <u>Rutherford Holdings, LLC v. Plaza Del Rey</u>, 223 Cal. App. 4th 221, 230 (2014). To prevail on a claim for conversion, the plaintiff must prove an "ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and resulting damages." <u>Avidor v. Sutter's Place, Inc.</u>, 212 Cal. App. 4th 1439, 1452 (2013). "Money can be the subject of an action for conversion if a specific sum capable of identification is involved." <u>Id.</u>

Plaintiff has not provided any persuasive evidence showing that Defendant actually received overpayments from September 2007 through August 2015. The only direct evidence Plaintiff submits in support of this point is the declaration of Ketty Saez, Assistant Vice President and Senior Counsel for Litigation, Bankruptcy, and Dispute Resolution for Plaintiff, who states in a conclusory fashion that Defendant "accepted monthly payments from Plaintiff in amounts that exceeded the monthly payments due under the terms of the Annuity Contract" in the amount of $113,155. Saez Decl. ¶ 7. Ms. Saez does not state how she determined that Defendant had been overpaid or how she calculated the amount of the overpayment. Ms. Saez's declaration is insufficient to show that Plaintiff is entitled to relief. <u>Am. Passage Media Corp. v.</u>

6

Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985) (in denying preliminary injunction motion, disregarding affidavits that were "conclusory and without sufficient support in facts"). Plaintiff could have provided reliable evidence in the form of copies of the actual checks sent to and cashed by Defendant, which should be in Plaintiff's possession, but Plaintiff failed to do so.

The only other evidence Plaintiff provides is the letters it sent to Defendant to try to collect the alleged overpayment. While the Court may consider hearsay evidence in conjunction with a preliminary injunction motion, these letters have already been demonstrated to be unreliable. These letters are inaccurate on their face. Every single letter sent by Plaintiff to Defendant states that, under the annuity contract, the monthly payments for the period of September 2007 through August 2008 should have been $2,400.84. This is contradicted by the annuity contract itself, which plainly shows that the monthly payments for the period of September 2007 through August 2008 should have been $3,400.44. This mistake affects Plaintiff's calculation of the alleged overpayment. According to Plaintiff's letters, Defendant actually received $2,400.84 for September 2007, which means that Defendant was not overpaid for that month and was actually underpaid by about $1000. In addition, the alleged overpayment for the period of October 2007 through August 2008 should be reduced by a significant amount. As a result, Plaintiff's calculation of the alleged overpayment as $127,588.12 is wrong. Although Defendant's counsel pointed out this mistake in his April 28, 2016 letter, Plaintiff continued to assert the amount

7

of the alleged overpayment was the same: $127,588.12.  See Downey Decl., Ex. I.  Plaintiff even maintained that the alleged overpayment was $127,588 in its initial complaint.  Docket No. 1 ¶ 9.  Plaintiff did not attempt to correct its mistake until thirteen days later, when it filed an amended complaint asserting the alleged overpayment was $113,155.  Docket No. 10 ¶ 9.  This amount is different from the amount that would result from correcting the mistake pointed out by Defendant, and so it is possible that Plaintiff found other mistakes in its calculation, none of which are disclosed in its preliminary injunction motion.  What is clear from all this is that the Court cannot rely on the letters -- or Plaintiff's accounting -- to determine whether Defendant received overpayments.

Moreover, Defendant has raised at least some serious doubt over whether Defendant was underpaid at various times over the years.  Plaintiff's own letters show that Defendant was underpaid for the month of September 2007.  Defendant's counsel's letter alleges that Defendant received a check for $1,100, which Plaintiff had forgotten to give to him.  The same letter also alleges that payments to Defendant stopped in October for some period of time, which Defendant confirmed at the hearing.  In addition, Defendant's counsel states that he personally sat down with Defendant and reviewed Defendant's records and found evidence that Plaintiff has underpaid Defendant "at various times more than $1,000 per month."  Walker Decl. ¶ 6.  If Plaintiff underpaid Defendant at various times, then those underpayments would likely count against the alleged overpayment, if any.

Accordingly, because Plaintiff cannot establish the amount

8

of money it claims it is owed, or even that it is owed any money at all, Plaintiff has not made a clear showing that it is likely to succeed on the merits of its claims.[2]

II. Significant threat of irreparable injury

Plaintiff alleges in a conclusory fashion that "Defendant will dissipate or otherwise transfer the lump sum payments received from Plaintiff and not preserve the funds for reimbursement to Plaintiff" while this case is pending. Motion at 7. Plaintiff claims that this is evidenced by Defendant's refusal to return the funds or accept a plan to settle the debt. Id. at 6-7.

"Purely monetary injuries are not normally considered irreparable." Lydo Enterprises, Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984); see also Idaho v. Coeur d'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90, 94 (1974). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009); see also In re Estate of Ferdinand Marcos, Human Rights Litig., 25 F.3d 1467, 1480 (9th Cir. 1994) (affirming district court's finding that money damages would be inadequate

---

[2] Because Plaintiff cannot show it is likely to be able to prove the elements of its claims, the Court need not consider at this time whether Defendant is likely to prevail on its statute of limitations argument.

9

"due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment").

Here, Defendant refused to settle the debt because he disputes that he was overpaid. Opposition at 6. He also disputes that he is legally required to return the amount demanded by Plaintiff. Id. As discussed above, Defendant's concerns have merit. Defendant's refusal to simply give in to Plaintiff's demands and pay the amount requested does not show that Defendant is likely to dissipate or secrete the funds, as Plaintiff suggests.

Plaintiff further argues that Defendant may not be able to return the funds at the end of this lawsuit because is "not competitively employable." Reply at 2. This argument is belied by the fact that, under the annuity contract, Plaintiff is obliged to pay Defendant substantial lump sum and monthly payments until at least 2044. See Saez Decl., Ex. A at 1-2. If this lawsuit results in a money judgment against Defendant, Defendant could presumably use those funds to pay the money judgment. Plaintiff responds that Defendant could transfer future lump sum payments on the secondary market. Reply at 3. But this argument appears to be merely speculative. "Speculative injury does not constitute irreparable injury." Goldie's Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 472 (9th Cir. 1984) (citing Wright and Miller, 11 Federal Practice and Procedure § 2948 at 436 (1973)); see also Aliya Medcare Fin., LLC v. Nickell, 2014 WL 12526382, at *7 (C.D. Cal. Nov. 26, 2014) (finding no likelihood of irreparable injury where

10

allegations of insolvency were "wholly speculative" and there was no evidence of actual dissipation or diversion of funds).

III. Balance of hardships

"Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24.

The balancing of the hardships favors Defendant. Defendant will likely suffer great hardship if he is required to freeze $200,000 in annuity payments, an amount which exceeds greatly even Plaintiff's monetary demand in this case. Defendant appears to rely heavily on his annuity payments in order to pay his bills. See Walker Decl. ¶¶ 2-5. Plaintiff does not dispute this point. Reply at 2.

By contrast, Plaintiff will not suffer any irremediable harm if the injunction does not issue. As discussed above, Plaintiff may recover money damages later, if and when a judgment against Defendant issues.

IV. Public interest

While the public interest does weigh in favor of fair disposition of legal disputes and the preservation of legal remedies, as Plaintiff contends, there has been no clear showing that Plaintiff is likely to succeed on the merits of its claims. There is also a significant public interest in proper administration and regulation of insurance companies, which provide "a vital service" that is "quasi-public" in nature. See Yue v. Conseco Life Ins. Co., 282 F.R.D. 469, 484 (C.D. Cal. 2012) (quoting Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809, 820 (1979)). Because it appears that Plaintiff committed several

11

errors in administering Defendant's annuity contact, and any overpayment occurred because of Plaintiff's own errors rather than Defendant's intentional wrongdoing, the public interest weighs against granting an injunction.

In sum, a preliminary injunction is not warranted because all of the factors favor Defendant.

## CONCLUSION

Plaintiff's motion for a preliminary injunction (Docket No. 11) is DENIED.

As stated at the hearing, Plaintiff has filed copies of the annuity contract as exhibits to at least the complaint and the present motion which contain personally identifiable information, including an individual's birth date and a financial-account number, in derogation of Federal Rule of Civil Procedure 5.2. The parties shall review the record to determine all instances where such information was filed on the docket. The parties shall then file a stipulated motion to remove the incorrectly filed documents, following the steps on the Court's website: http://www.cand.uscourts.gov/ecf/correctingmistake#SENSITIVE. The parties should do so without delay.

At the parties' Rule 26(f) conference, the parties shall: (1) review the checks that were sent to and cashed by Defendant and determine the amount of Plaintiff's overpayment to Defendant, if any; (2) present their respective positions on the effect of the statute of limitations on the potential recovery in this case, and (3) discuss whether the statute of limitations issue is suitable for disposition as an early motion for summary judgment. The parties shall report on their discussion of the above issues

in their case management statement.

　　　IT IS SO ORDERED.

Dated: October 5, 2017

CLAUDIA WILKEN
United States District Judge